**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vincent George PARKS, Defendant–
Appellant.**

**No. 00–10477.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 2001.

Filed April 3, 2002.

Terrence A. Roden, Los Angeles, California, for the defendant-appellant.

Steven W. Myhre, Las Vegas, Nevada, for the plaintiff-appellee.

Before POLITZ,* W. FLETCHER, and FISHER, Circuit Judges.

## OPINION

POLITZ, Circuit Judge.

Vincent Parks appeals his conviction on four counts arising from a 1998 bank robbery in Las Vegas, Nevada. After a close review of the record, consideration of the oral arguments of counsel, and examination of applicable and controlling law, we affirm.

## BACKGROUND

Parks and codefendant Hakim Williams entered a Wells Fargo bank in Las Vegas, Nevada. Williams stood lookout while Parks, brandishing a 9mm handgun, forced one of the bank tellers to fill a pillowcase with money. The teller placed more than $72,000 in cash along with two electronic "B-packs" and 36 marked "bait bills" into the bag. The men then left the bank in a white, late model car that witnesses described as a Lincoln or Mercury. The vehicle was driven by Ellis Clark. A short distance away, the men transferred to a blue car and quickly exited the scene.

---

* Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

FBI agents tracked the men to an apartment by tracing signals from the electronic "B-packs." Las Vegas police officers located a blue Ford Taurus, matching the description of the second getaway car, in front of the apartment. The officers saw a bulletproof vest in plain view inside the vehicle and they performed an initial search to determine whether the auto was the source of the electronic signal. The officers called the Las Vegas SWAT team to the scene. The SWAT officers surrounded the apartment from which it was determined that the signal was being emitted. Four men, a child, and a woman were found therein. A search of the apartment disclosed a pillow case containing the two B-packs, 36 bait bills, more than $72,000 in cash, a loaded 9mm semiautomatic pistol, additional 9mm magazines, and a face-mask like that worn by the bank robbers. Parks' fingerprints were found on one of the 9mm magazines.

Officers obtained a warrant to search the Taurus and found a sawed-off 12–gauge shotgun, a 7.62 SKS rifle, black clothing and boots, a bulletproof vest, personal papers and identification belonging to Parks and Williams, and a rental agreement naming Williams as renter and Parks as an additional authorized driver.

Officers found a white Lincoln Towncar, matching the description of the first getaway car, a few blocks from the bank. They impounded it at the FBI impound lot, obtained a search warrant, and searched the vehicle. The search revealed a rental agreement naming a third party as renter, and Parks' fingerprint and palm print were found on the folder containing the rental agreement.

The government charged Parks, along with Clark and Williams, with conspiracy to commit armed bank robbery, armed bank robbery and aiding and abetting the same, and use of a firearm during and in relation to a crime of violence and aiding and abetting the same.[1] The indictment additionally charged Parks individually with being a felon in possession of a firearm. The government filed an information notifying the court and the three defendants of its intent to seek a mandatory life sentence under 18 U.S.C. § 3559.

Subsequent to his arrest, Williams gave a written confession, admitting to the robbery and stating that Parks was the individual who collected the money inside the bank. The statement, redacted by blotting out those portions inculpatory to Parks with a black pen, was read aloud to the jury at a joint trial and admitted into evidence. The trial judge instructed the jury that it could consider Williams' statement only in regard to Williams' guilt.

Prior to trial, the state announced its intent to call Torrance Police Department Detective Petersen as a witness to connect Parks to the Lincoln. Parks objected on the grounds that the testimony would involve other investigations in other robberies. The court denied the objection, but limited the scope of Petersen's testimony to connecting Parks to the Lincoln. The prosecution called Petersen as a witness, and after establishing that Petersen was a detective and was assigned to perform surveillance on the Lincoln, the prosecutor asked what type of surveillance he had been performing in relation to Parks and the vehicle. Petersen responded that it was robbery surveillance. Parks objected and moved for a mistrial. His motion for mistrial was denied, but the jury was admonished to disregard Petersen's answer.

The jury convicted all three defendants on all counts charged in the indictment. After Parks' conviction, his counsel learned of Parks' alleged plan to take him hostage

1. Parks, Williams, and Clark were charged in a single, superseding indictment.

during a prison visit. Counsel promptly filed a motion to be relieved as attorney of record. The motion was granted and, due to this and other rescheduling problems, Parks' sentencing hearing was continued until sixteen months after his conviction. Parks eventually was sentenced to: (a) 60 months on count one, concurrent; (b) life on count two;[2] (b) 60 months on count three, consecutive; and (d) 120 months on count five, concurrent.

## ANALYSIS

*The Introduction of Williams' Partially Redacted Statement:*

 Parks complains that the introduction of Williams' partially redacted statement at their joint trial violated his sixth amendment right of confrontation. We generally review evidentiary rulings for abuse of discretion.[3] We review alleged violations of the confrontation clause *de novo*[4] under a harmless beyond a reasonable doubt standard.[5]

 "[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."[6] Under the rule of *Bruton v. United States,*[7] however, no Confrontation Clause violation occurs when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."[8] The Supreme Court recently clarified the *Bruton* rule in *Gray v. Maryland,*[9] holding that the redacted confession must not reference the codefendant by implication, such as by "replac[ing] a name with an obvious blank space or symbol or word such as 'deleted.' "[10]

The final version of Williams' redacted statement was not settled until the day of testimony. When the government offered the statement Parks objected and unsuccessfully requested that the statement be retyped, so that the jury would be unable to see the black lines that covered the redacted portions. The redacted version of Williams' statement, introduced as Government Exhibit 67, reads as follows:

> I, Hakim Mohammed Williams, have been advised of my rights and make this voluntary statement of my own free will. I came over from Pomona, CA sometime yesterday ~~with Vincent Parks~~. I rented a blue ford Torino to drive over. Ellis Clark was driving the car this morning ~~with Vince and I~~. There were guns in the car, in a bag ~~which belonged to Vince. Sometime in the morning after we left Ellis's mother's house, Vince and Ellis started talking about getting some money.~~ I assumed they were joking about robbing a bank. I tried to weasel out of doing it about four or five times, but they kept talking about it and Ellis kept driving. We eventually came up to

**2.** 18 U.S.C. § 3559.

**3.** *United States v. Murillo,* 255 F.3d 1169, 1174 (9th Cir.2001).

**4.** *United States v. Peterson,* 140 F.3d 819, 821 (9th Cir.1998).

**5.** *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**6.** *Richardson v. Marsh,* 481 U.S. 200, 207, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

**7.** 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**8.** *Richardson,* 481 U.S. at 211, 107 S.Ct. 1702.

**9.** 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).

**10.** *Id.* at 189, 118 S.Ct. 1151.

a Wells Fargo Bank. ~~Vince told me to put on a mask and go along with it. I told him~~ I didn't want to do it because it wasn't safe. ~~Vince had a handgun and put on a mask. Vince and~~ I went into the bank while Ellis waited in the car outside. ~~We walked in the bank and~~ everyone got down on the floor. ~~Vince jumped the counter and took money out of the drawer.~~ I just stood there to go along with it. ~~After Vince had the money we left the bank and got into the car.~~ Ellis drove south on the freeway. ~~We got out~~ in an apartment area, and I didn't know where I was. We went into an apartment after Ellis talked to a woman at the apartment. I used the apartment's bathroom and lay down on the couch. I went to sleep until I heard all the noise and was told the police wanted us to come out. I never should have been there, I didn't want anyone to get hurt, it was a mistake.[11]

Parks asserts that the admission of Williams' redacted statement violated his rights under the Confrontation Clause because the statement included the term "they" in various places from which the jury could infer the existence of a third accomplice. Parks further contends that because he was Williams' codefendant, the jury would naturally conclude that his was the name redacted from the confession. We are compelled to agree.

All sections in which Williams made any reference to Parks or the two of them acting together were redacted, including many times when the court redacted the word "we." Despite the court's efforts, however, two sentences remained that contained the word "they," indicating at least *two* other individuals were involved other than Williams. One of the other individuals, Ellis Clark, was named in the statement and, because of Parks' redactions, the other was not. Additionally, Ellis was said to have "waited in the car outside" at the time of the robbery and Williams states that in the bank he "just stood there to go along with it." This further indicates the presence of a third person active in the robbery.

 The combination of an obviously redacted statement with the language implying the existence of a third person reasonably could lead the jury to conclude that the unnamed third person must be the codefendant before them. The marking out of an entire phrase, combined with the inference that a third party was named in that phrase, may have the same practical effect as blanking out merely the name of the third party. By blanking out the name of the third party or inserting the word "deleted" in place of the name, the court not only fails to avoid an inference that the defendant was the party named but, rather, may underscore the importance of the accusation.[12] In addition, while a jury is generally presumed to follow a curative instruction, the court's instruction that the jury consider the statement only against Williams may act as an additional catalyst, providing the jury with a reason for the redaction—i.e., the codefendant is the person named in the redacted portion—and making it difficult for the jury to consciously and unconsciously follow its instruction.[13]

 Whether or not the admission of Williams' statement was error does not end our inquiry. We must determine whether the error was harmless. After an exhaustive review of the record we con-

---

11. The statement was handwritten in all capital letters and the stricken portions were covered with thick black lines, making it impossible for the jury to read those words.

12. *Gray*, 523 U.S. at 193, 118 S.Ct. 1151.

13. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

clude that there is substantial evidence of Parks' guilt, to the end that we are persuaded beyond peradventure that any error was harmless beyond a reasonable doubt.

Count two, for which Parks received the mandatory life sentence under 18 U.S.C. § 3559, charges Parks with armed bank robbery under 18 U.S.C. § 2113(a) & (d) and aiding and abetting under 18 U.S.C. § 2. Under 18 U.S.C. § 2, "a co-conspirator who aids and abets an armed bank robbery can be convicted as a principal." [14] "[T]o convict a defendant for bank robbery under an aiding and abetting theory, this circuit requires the government to show beyond a reasonable doubt both that the defendant knew that the principal had and intended to use a dangerous weapon during the robbery, and that the defendant intended to aid in that endeavor." [15] Even if the evidence were deemed insufficient to place Parks inside the bank and, therefore, to support a finding that he was guilty of armed bank robbery, the record demonstrates both Parks' knowledge that Williams had a dangerous weapon and intended to use it during the robbery of the Wells Fargo Bank, and that Parks intended to aid in that endeavor.

The record overwhelmingly links Parks to the bank robbery conspiracy. As to the Lincoln Towncar, used as the robbers' first getaway car: (1) Parks' fingerprint and palm print were found on the rental agreement; (2) officer Petersen testified that while performing surveillance on the Lincoln prior to the robbery he observed it parked in front of Parks' residence. Other evidence ties Parks to the Ford Taurus used as the robbers' second getaway car: (1) Parks was named as an additional authorized driver on the rental agreement; (2) a copy of Parks' driver's license was attached to the rental agreement and his license number was written on the agreement; and (3) the Ford was located outside the Chang Street apartment in which the officers found Parks. Additionally, shortly after the robbery occurred the police located Parks, along with Williams, with a substantial amount of robbery-related evidence and instruments in the Chang Street apartment. Parks' fingerprint on the magazine of the 9mm handgun discovered inside the money bag found in the Chang Street apartment and the other firearms found in the Ford Taurus establishes adequately that he knew a dangerous weapon was to be used in the bank robbery.

*Parks' Motion for Severance*

Parks complains that the district court erred in denying his motion for severance from codefendant Williams. We review a district court's decision on whether to grant a motion for severance for abuse of discretion.[16] Parks moved to have his trial severed from Williams' prior to their joint trial. The trial court denied the motion. The district court retains substantial discretion on the issue of severance, and in light of the government's agreement to redact the statement in question, we are persuaded that the trial court did not abuse its discretion in denying Parks' motion for severance.

*"Other Crimes" Testimony*

Parks contends that Petersen's statement that he was conducting "robbery

---

14. *United States v. Coleman,* 208 F.3d 786, 793 (9th Cir.2000); *see also* 18 U.S.C. § 2.

15. *United States v. Dinkane,* 17 F.3d 1192, 1195 (9th Cir.1994); *see also United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.1974).

16. *United States v. Sarkisian,* 197 F.3d 966, 978 (9th Cir.1999).

surveillance" was evidence of other crimes because it demonstrates that Parks was under surveillance for other robberies. We review admission of "other crimes" evidence for abuse of discretion; however, whether the evidence is indeed other crimes evidence we review *de novo*.[17] Rule 404(b) of the Federal Rules of Evidence is a rule of inclusion "designed to avoid 'a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment.' "[18] We will reverse for prosecutorial misconduct, however, only when it is more probable than not that the misconduct materially affected the verdict.[19]

■■■ In the instant action Parks objected and moved for a mis-trial following Petersen's statement. The trial court sustained the objection and gave a curative admonition to the jury, but denied the motion for a mistrial. Under these facts, we are persuaded that the statement concerned other crimes, but find any error to be harmless.

■■■ The statement was directly related to other crimes and a jury would likely infer from the statement that Parks had committed bank robberies in the past. The statement, therefore, appears to have been prior crimes evidence. As noted, the court sustained Parks' objection, however,

and admonished the jury to disregard the statement. A jury is presumed to follow a curative instruction.[20] We perceive no abuse of discretion in the trial court's denial of Parks' motion for a mistrial.

*Probable Cause for Search of the Vehicles*

■■■ Parks contends that the officers lacked probable cause to search the Towncar and Taurus. We review determinations of probable cause *de novo*, reviewing the court's underlying factual findings only for clear error.[21] "Determinations of probable cause must be upheld if, under the totality of the circumstances surrounding a warrant request, the issuing magistrate had a substantial basis for finding probable cause."[22]

■■■ "To establish standing to challenge the legality of a search or seizure, the defendant[] must demonstrate that [he has] a legitimate expectation of privacy in the items seized or the area searched."[23] A defendant makes this demonstration by establishing "a subjective expectation of privacy in the area searched," that is, "one that society would recognize as objectively reasonable."[24] If the defendant has standing he then has "the burden of establishing that, under the totality of the circumstances, the search or seizure violated [his] legitimate expectation of privacy . . . ."[25]

**17.** *United States v. Hill*, 953 F.2d 452, 455 (9th Cir.1991).

**18.** *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir.1989) (*quoting* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[04], at 404–29 (1988)).

**19.** *United States v. Hinton*, 31 F.3d 817, 824 (9th Cir.1994).

**20.** *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

**21.** *United States v. Rojas–Millan*, 234 F.3d 464, 468 (9th Cir.2000).

**22.** *Hill*, 953 F.2d at 455.

**23.** *United States v. Sarkisian*, 197 F.3d 966, 986 (9th Cir.1999) (internal quotations omitted).

**24.** *Id.*

**25.** *Id.*

■ The district court determined that Parks did not have a reasonable expectation of privacy in the Lincoln Towncar. We agree. The Lincoln was rented by a third party and abandoned on a public street following the robbery.[26]

The district court found that Parks had standing as relates to the Taurus, but that probable cause existed for the warrant. We are persuaded that probable cause existed for the warrant to search the Taurus.

■ In determining whether probable cause exists, a neutral and detached magistrate must evaluate the totality of the circumstances set forth in the search warrant affidavit to make a practical, common-sense decision whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[27] "Direct evidence linking criminal objects to a particular site is not required...."[28] Rather, the "magistrate need only determine that a fair probability exists of finding evidence considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property."[29] In making its determination, "the court issuing the warrant is entitled to rely on the training and experience of police officers."[30]

■ In issuing the search warrant for the Taurus, the magistrate relied on the affidavit of an FBI agent with more than thirty-one years experience—eighteen as a field officer. The affidavit related that: (a) a witness observed the robbers leave the bank in a white car; (b) another witness saw two or three men [31] transfer from a white car to a blue car a few blocks from the bank; (c) agents tracked the electronic signal from the B-packs to an apartment complex where the blue Taurus was parked; (d) the suspects, money, guns, and B-packs were located inside the apartment; and (e) officers observed a bullet-proof vest in plain view inside the Taurus. This obviously is substantial evidence demonstrating probable cause to search the Taurus.

*Parks' Life Sentence*

■ Parks contends that the district court erred in applying the preponderance of the evidence standard rather than the beyond a reasonable doubt standard in finding that he had committed prior felonies that were applied to enhance his sentence. We review a district court's interpretation of a statute and its determination whether a statute is constitutional *de novo*.[32]

■ Federal 18 U.S.C. § 3559 mandates a life sentence when a defendant has been convicted of two or more serious violent felonies, and each of the prior offenses, other than the first, was committed

**26.** *See United States v. Twilley,* 222 F.3d 1092, 1095 (9th Cir.2000) (holding that when a vehicle is rented by a third party, the defendant has no reasonable expectation of privacy in the vehicle); *but see Sarkisian,* 197 F.3d at 987 (holding that the appearance of the defendant's name on a rental agreement providing him access to an area was insufficient to establish standing without a showing of property interest).

**27.** *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**28.** *United States v. Jackson,* 756 F.2d 703, 705 (9th Cir.1985).

**29.** *Id.* (internal citations omitted).

**30.** *United States v. Gil,* 58 F.3d 1414, 1418 (9th Cir.1995).

**31.** The witness could not recall whether the men were black or white.

**32.** *United States v. Hunter,* 101 F.3d 82, 84 (9th Cir.1996); *United States v. Kim,* 94 F.3d 1247, 1249 (9th Cir.1996).

after the defendant's conviction for the preceding serious violent felony. The standard for the judge to find factors supporting a sentence enhancement is by a preponderance of the evidence.[33] Parks asserts that proof beyond a reasonable doubt and submission to a jury are required as to the two prior convictions applied to enhance his sentence. This contention is without merit.

In *Apprendi v. New Jersey*,[34] the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [35] We decline to depart from this unambiguous language of our Supreme Court colleagues.[36]

*Parks' Right to Counsel*

■■■■■ Parks asserts that a delay of sixteen months between his conviction and sentencing denied him his right to counsel and violated the Speedy Trial Act. Both of these claims are baseless. The Speedy Trial Act addresses the time requirements between indictment and trial, but does not address sentencing.[37] Further, the record establishes that Parks was not without counsel for any meaningful period of time from his initial appearance to his final sentencing.

For these reasons, the judgment appealed is in all respects AFFIRMED.

---

**33.** *United States v. Young,* 33 F.3d 31, 32 (9th Cir.1994).

**34.** 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**35.** *Id.* at 490, 120 S.Ct. 2348.

**36.** *See United States v. Pacheco–Zepeda,* 234 F.3d 411, 414–15 (9th Cir.2000).

**37.** 18 U.S.C. § 3161(c)(1).