**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Issam AHMAD, aka Suliman Abulaila, Defendant—Appellant.**

**No. 03–10279.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 2004.

Decided Dec. 8, 2004.

---

6. *See Clark*, 1 F.3d at 823.

7. *United States v. Valdivia*, 60 F.3d 594, 595 (9th Cir.1995).

8. *See Chacon v. Wood*, 36 F.3d 1459, 1464 (9th Cir.1994).

Gregory J. Damm, USLV—Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Anne R. Traum, Esq., Federal Public Defenders Office, Las Vegas, NV, for Defendant–Appellant.

Before: FERGUSON, REINHARDT, and PAEZ, Circuit Judges.

## MEMORANDUM *

Issam Ahmad Suliman Abu Laila ("Suliman") appeals his conviction and sentence for fraud relating to identification documents, access devices, and an application for a passport. He contends that the search warrants for his apartment, storage unit, and two computers were not supported by probable cause, and that the officer's reliance on the warrants did not fall within the "good-faith" exception to the exclusionary rule. In addition, he argues that his sentence was improper in light of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We affirm the conviction, but remand for the district court to determine whether resentencing is appropriate under *United States v. Castro,* 382 F.3d 927, (9th Cir. 2004).

### 1. *Fourth Amendment Claims*

We hold that the government has waived the claim that Suliman failed to establish standing to challenge the search. *See Steagald v. United States,* 451 U.S. 204, 209, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). However, we also conclude that the government acted in good-faith in executing the warrants.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Under *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. A magistrate judge may issue a warrant for a residence if a "reasonable nexus" exists between the residence and the evidence sought; that is, the magistrate "need only find that it would be reasonable to seek the evidence there." *United States v. Chavez–Miranda,* 306 F.3d 973, 978 (9th Cir.2002) (citation omitted). In making this determination, the magistrate judge must consider "the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property," *United States v. Lucarz,* 430 F.2d 1051, 1055 (9th Cir.1970), but, in the end, he must make a "practical, common-sense" decision. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317.

■ At the time the investigating agents obtained a search warrant for Suliman's apartment, Suliman had already been arrested for making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542, and the agents had already obtained substantial evidence that he was using at least three different identities. In an effort to obtain further inculpatory documentary evidence, they sought a warrant to search an apartment that they reasonably believed to be his residence, on the basis of record checks of the vehicle that he was driving at the time of his arrest as well as additional investigation. The affidavit, submitted by Agent Chalupsky, explained the evidence against Suliman and stated that, based on his fifteen years of training and experience, he believed that "persons who obtain fraudulent documents" tend to hide such documents in their residences, along with documents relating to their true identity. Suliman argues that Agent Chalupsky's affidavit was insufficient to establish a nexus between his residence and the evidence sought.

We need not determine here whether probable cause exists for the issuance of the warrant.[1] Even assuming that the affidavit was insufficient to establish probable cause, it fell within the good-faith exception established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There is no evidence that the officer seeking the warrant acted in bad faith; the warrant was issued by a proper authority; and there is no evidence that the issuing magistrate abandoned his neutral judicial role. Furthermore, the affidavit was not "so lacking in indicia of probable cause as to render official belief

---

1. *But see United States v. Chavez–Miranda,* 306 F.3d 973, 978 (9th Cir.2002) (noting that issuing judges may rely on the training and experience of affiant police officers and recognizing that in narcotics cases evidence is likely to be found in dealer's residence); *United States v. Sayakhom,* 186 F.3d 928, 934 (9th Cir.1999) (holding that there was probable cause to search residence and car of mail fraud suspect where postal inspector stated that, based on his experience and belief, operators of businesses that involve paperwork typically leave paperwork in their cars and residence); *United States v. Terry,* 911 F.2d 272, 275 (9th Cir.1990) ("[A] magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.") (internal quotation marks and citation omitted); *United States v. Grandstaff,* 813 F.2d 1353, 1356 (9th Cir.1987) (reasonable to infer that a robber might still have remainder of stolen money in hotel room five months after the robbery); *United States v. Jacobs,* 715 F.2d 1343, 1346 (9th Cir.1983) (reasonable to conclude that incriminating articles of clothing would be found in residence three and a half months after robbery).

in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405 (citation omitted); *see also United States v. Schultz,* 14 F.3d 1093, 1098 (9th Cir.1994); *United States v. Procopio,* 88 F.3d 21, 28 (1st Cir.1996).[2]

We further conclude that the officers acted in good-faith in executing the warrant for the storage unit, which the magistrate issued "[i]n view of the massive amount of fraud-related materials found in Suliman's apartment, and Chalupsky's observation that the closet and storage space in the apartment was filled to capacity." Finally, we conclude that the agents did not exceed the scope of the warrants, because a "reasonable officer [would] have interpreted the warrant[s] to permit the search[es] at issue." *United States v. Gorman,* 104 F.3d 272, 274 (9th Cir.1996). Even assuming the agents exceeded the scope of the warrants, the seizures were justified by the plain-view doctrine. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). As the district court concluded, given "the sheer volume of bank statements, credit card statements, checks and credit cards—all in a large variety of names—their incriminating nature as evidence of possible identity and credit card fraud was immediately apparent."

## 2. *Sentencing claims*

■ Although we reject Suliman's claim that his sentence was unfair because some of his fraud was committed prior to his offense date, *see United States v. Ortland,* 109 F.3d 539, 546 (9th Cir.1997), we remand the question of the legality of his sentence to the district court. Normally, we would defer consideration of the question whether *Blakely,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403, renders Suliman's sentence unconstitutional until the Supreme Court issues its decisions in *United States v. Booker,* 375 F.3d 508 (7th Cir.2004), *cert. granted* — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), and *Fanfan v. United States,* No. 03–47, 2004 WL 1723114 (D.Me. June 28, 2004), *cert. granted,* — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004). However, because the portion of his sentence unaffected by *Blakely* has already expired, we remand the issue to the district court for its consideration pursuant to *United States v. Castro,* 382 F.3d 927.

**AFFIRMED** in part; **REMANDED** for further proceedings.

FERGUSON, Circuit Judge, dissenting.

I do not accept the majority's rationale and therefore dissent from the court's holding. The majority holds that even if probable cause did not exist to issue the

---

2. We do not suggest that the *Leon* good-faith exception would apply in all cases where materials might reasonably be found in a suspect's home. For example, the exception would not apply where, as in *United States v. Gourde,* 382 F.3d 1003 (9th Cir.2004), the officers had ample opportunity to obtain the desired information from another source and there was insufficient evidence to demonstrate that the suspect had committed a crime; in such case, there would be no fair probability that incriminating material would be found in the suspect's house and a search would be in bad-faith. *Id.* at 1012–14. Similarly, it would not apply where an affidavit

did not connect the particular location to the suspect, rendering official belief in the validity of the warrant unreasonable. *United States v. Hove,* 848 F.2d 137, 139–40 (9th Cir.1988).

The dissent relies heavily upon *United States v. Schultz* for the proposition that probable cause does not exist when the only connection between the crime and the residence is the officer's reasonable belief that the evidence might be hidden there. However, in that case, although the Sixth Circuit determined that there was an absence of probable cause, it held that the good-faith exception applied. 14 F.3d at 1098.

first search warrant, the evidence seized should be admitted under the good-faith exception to the Fourth Amendment exclusionary rule. The Fourth Amendment, however, does not permit the type of fishing expedition that occurred in this case. Here, the magistrate judge did not have a "substantial basis" for concluding that probable cause existed to issue the search warrant. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Moreover, the good-faith exception does not apply because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### I.

In reviewing the magistrate judge's probable cause determination, we must decide whether the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317. A magistrate judge's probable cause determination must be a "practical, common-sense decision" that, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. But probable cause that a suspect committed a crime does not automatically generate probable cause to search a suspect's home. *United States v. Valenzuela,* 596 F.2d 824, 828 (9th Cir. 1979). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Before permitting a search of a residence, a magistrate judge

must therefore conclude that a "reasonable nexus" exists between the evidence sought and the residence. *United States v. Chavez–Miranda,* 306 F.3d 973, 978 (9th Cir. 2002) (quoting *United States v. Rodriguez,* 869 F.2d 479, 484 (9th Cir.1989)).

In this case, nothing in the affidavit directly or indirectly tied the crime of passport fraud, or evidence of its commission, to the appellant's Green Valley apartment address. For example, the record does not indicate that any official or unofficial paperwork relating to the false statement in the passport application was ever mailed to or from the apartment, or that any phone calls made to secure the fraudulent passport originated from the apartment.

The only connection in the affidavit between the suspected illegal activity and the appellant's residence is the agent's statement that, in his "training and experience," individuals "who obtain fraudulent identification documents tend to retain and secure such items," as well as documents relating to their true identity, in their residences. Although the court may rely on police officers' training and experience when assessing the totality of circumstances supporting probable cause, *United States v. Parks,* 285 F.3d 1133, 1142 (9th Cir.2002), the affiant's training and experience should not "substitute for the lack of evidentiary nexus" between the place searched and the criminal activity. *United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir.1994).

An officer's mere conjecture as to where incriminating evidence might be found, in the absence of factual support, does not establish probable cause. In *Schultz,* for example, two search warrants were issued in connection with a narcotics investigation, the first for safety deposit boxes that the defendant maintained at a local finan-

cial institution, and the second for his residence. *Id.* at 1096. The Sixth Circuit upheld the second search warrant because evidence existed that suggested that the defendant was distributing narcotics from his apartment. *Id.* at 1097. The court held, however, that the first warrant should not have been issued because no evidence connected the safe deposit boxes to any illegal activity. *Id.* at 1097–98. The only connection alleged in the affidavit was the officer's statement that, "based on his training and experience, [he] believe[d] ... that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes." *Id.* at 1097 (alteration in original) (citations omitted). The Sixth Circuit found that "guess" insufficient. "To find otherwise would be to invite general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose." *Id.* at 1098.

As in *Schultz,* Special Agent Steven Chalupsky ("Agent Chalupsky") only learned of the Green Valley apartment because of a record check and had no evidence to connect the apartment to illegal activity. His statement that persons with fraudulent identification keep identity documents in their residences is a guess much like that found to be insufficient in *Schultz.* It is no less conclusory than a statement that an affiant simply believed that contraband would be found in a given location. *See United States v. Lockett,* 674 F.2d 843, 845–46 (11th Cir.1982) (rejecting as conclusory a federal agent's statement that he believed that dynamite was stored at the residence of an individual suspected of threatening to use explosives against an ex-employer). As such, probable cause did not exist to issue the first search warrant.

## II.

The majority holds, nevertheless, that even if probable cause did not exist, the evidence seized should be admitted under the good-faith exception to the Fourth Amendment exclusionary rule. *United States v. Leon* holds that evidence obtained by officers reasonably relying on a warrant issued by a detached and neutral magistrate is admissible. 468 U.S. 897, 104 S.Ct. 3405 (1984). The good-faith exception does not apply, however, where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405. Here, it was objectively unreasonable for federal agents to rely on a warrant issued without any showing of a connection between the illegal activity and the suspect's residence.

In *Leon,* it was not objectively unreasonable for the police to rely on the search warrant in question because the officer had set forth facts in the affidavit that indirectly tied the crime of drug importation to the defendant's residence. The affidavit, in particular, related the results of an extensive drug-importation investigation involving Leon and several other defendants. *Id.* at 902, 104 S.Ct. 3405. The Burbank Police had observed automobiles and several persons arriving with suspicious small packages at the residence of one of the co-defendants. *Id.* at 901–902, 104 S.Ct. 3405. The police also "witnessed a variety of relevant activity involving [defendants'] automobiles," including Leon's, and "observed a variety of other material activity at the two residences," including Leon's residence, "as well as at a condominium ..." *Id.* at 902, 104 S.Ct. 3405. Even though the police did not see anyone leave Leon's house with small packages, the affidavit still connected Leon's residence to both the other residences under investigation and the crime in question.

*Id.* at 902, 104 S.Ct. 3405. As a result, it was not objectively unreasonable for the officers to infer that probable cause existed to search Leon's residence.

Here, however, Agent Chalupsky supplied no factual evidence whatsoever connecting the Green Valley apartment to Suliman's suspected passport fraud. The majority wrongly concludes that because the federal agents had (1) already obtained substantial evidence that Suliman was using at least three different identities, and (2) applied for a search warrant to search an apartment that they reasonably believed to be Suliman's residence, it was objectively reasonable for them to rely on the search warrant. But unlike in *Leon*, where the police both suspected Leon was involved in drug importation and observed material activity at his residence, the officers here had no factual basis for concluding that the "specific 'things' to be searched for and seized" were located in Suliman's residence. *Zurcher*, 436 U.S. at 556, 98 S.Ct. 1970.

In fact, the affidavit in this case is but one small step removed from that in *United States v. Hove*, 848 F.2d 137 (9th Cir. 1988). There, a magistrate issued a search warrant for a residence belonging to the father of a woman suspected of sending threatening letters to her ex-husband. *Id.* at 138–39. The affidavit, however, listed the address of the house without explaining its connection to the suspect. *Id.* at 139. We refused to apply the good-faith exception because the affidavit gave no reason for searching the particular location, rendering official belief in the warrant's validity unreasonable. *Id.* at 139–40.

This case might even be stronger than *Hove*. There, the officer knew additional facts linking the suspect to the search location, but those facts did not appear in the final affidavit, allegedly because of a stenographer's mistake. *Id.* at 139. Here, there is no suggestion that any additional facts left out of the affidavit established the required nexus. Thus, the officer's general statement based on his training and experience "may have added fat to the affidavit, but certainly no muscle." *United States v. Weber*, 923 F.2d 1338, 1346 (9th Cir.1990) (rejecting good-faith exception in a case with "foundationless expert testimony"). "Stripped of the fat, it was the kind of 'bare bones' affidavit that is deficient under *Leon* . . ." *Id.*

### III.

Because probable cause did not exist to issue the first search warrant, and because the good-faith exception does not apply, the evidence obtained from the search of Suliman's apartment should have been excluded.