UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>MICHAEL JOLLY,<br><br>Defendant-Appellant. | No. 22-50220<br><br>D.C. No.<br>2:20-cr-00438-MCS-1<br>Central District of California,<br>Los Angeles<br><br>ORDER |

Before: BOGGS,[*] FRIEDLAND, and BRESS, Circuit Judges.

The Memorandum Disposition filed on August 14, 2025, is amended and the amended Memorandum Disposition is filed concurrently with this order. With this order, Judges Boggs and Friedland vote to deny Jolly's petition for panel rehearing, and Judge Bress votes to grant it. The petition for rehearing is **DENIED**. No further petitions for rehearing may be filed.

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FEB 17 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL JOLLY,

Defendant-Appellant.

No.   22-50220

D.C. No.
2:20-cr-00438-MCS-1

AMENDED MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted March 24, 2025
Pasadena, California

Before:  BOGGS,[**] FRIEDLAND, and BRESS, Circuit Judges.
Dissent by Judge BRESS.

Defendant-Appellant Michael Jolly appeals his convictions for possession

with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a).

On appeal, Jolly challenges the admission of certain evidence under the Federal

Rules of Evidence, the Government's presentation of that admitted evidence at

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

trial, and the admission of other evidence under the Confrontation Clause. Jolly also argues that even if no single error is sufficiently prejudicial to warrant reversal, the cumulative prejudicial effect of multiple errors is. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo whether evidence is "other act" evidence under Rule 404(b) and review for abuse of discretion the district court's admission of evidence under Rule 404(b). *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019). We review for abuse of discretion the district court's admission of evidence under Rule 403. *United States v. Cabrera*, 83 F.4th 729, 736 (9th Cir. 2023). When "it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict," such an evidentiary error does not warrant reversal. *United States v. Holmes*, 129 F.4th 636, 651 (9th Cir. 2025). We review de novo "whether any prosecutorial misconduct occurred." *United States v. Flores*, 802 F.3d 1028, 1034 (9th Cir. 2015). We review de novo whether a defendant's Confrontation Clause rights were violated. *United States v. Johnson*, 875 F.3d 1265, 1278 (9th Cir. 2017). A Confrontation Clause violation does not require reversal "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Even where no one error is sufficiently prejudicial, we evaluate whether the cumulative weight of multiple errors is

prejudicial enough to warrant reversal.  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

1.  The district court did not err in admitting the September 23 or 26 phone calls, in which Jolly stated, "I sell drugs to [five or six] people."  Those statements are directly relevant to whether he possessed with intent to distribute on July 2, 2020, because they evince that Jolly had an ongoing drug business during a time period that included July 2, 2020, making it more probable "than it would be without the evidence" that Jolly possessed with intent to distribute on that date. Fed. R. Evid. 401; *see United States v. Moorehead*, 57 F.3d 875, 878 (9th Cir. 1995) (holding that evidence of ongoing criminal conduct identical to the conduct being charged during the relevant time period is "direct evidence" of the charged crime).[1]

Any proper exercise of discretion would require admitting the September 23 and 26 calls under Rule 403.  Although those calls are prejudicial, "relevant evidence is inherently prejudicial; [and] it is only *unfair* prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."  *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)

---

[1] Although the district court may have concluded that the calls were direct evidence for a mistaken reason (i.e., that the calls described actual drug sales that occurred on July 2), we review de novo whether evidence is "other acts" evidence and therefore are not limited to the district court's reasoning.

3

(emphasis added) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)). Here, the prejudicial material and the probative material are one and the same. What makes the September 23 and 26 calls prejudicial is what makes them probative, too. Any prejudice caused by those calls was therefore not *unfair*, and the district court did not err in admitting the September 23 or September 26 calls under Rule 403. *See United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003).

Jolly argues that even if the September 23 and 26 phone calls were admissible, the Government improperly used the September 23 or 26 calls as propensity evidence. That argument is also unavailing. Jolly's examples mostly indicate that the Government repeatedly referred to the evidence of those calls, but repeatedly referring to properly admitted evidence is not improper. *See United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011) (explaining that prosecutors "have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence" (citation omitted)). Although the Government did refer to Jolly as a "drug dealer" at one point, we have held that calling a defendant a "dope dealer" is a permissible "hard blow" when that defendant is charged with dealing drugs. *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993). Here, Jolly was charged with possession with intent to distribute, which requires proof of an intent to deal drugs. Even if calling Jolly a

4

drug dealer were improper, "a single improper statement" would not warrant reversal. *Flores*, 802 F.3d at 1040.[2]

But even if Jolly is right that the Government used, or the jury might have considered, the September 23 or 26 calls as propensity evidence, he was entitled at most to a Rule 404(b) limiting instruction. Any error that the district court made in declining to give a limiting instruction was harmless. "Reversal is not required if 'there is a "fair assurance" of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict.'" *United States v. Lague*, 971 F.3d 1032, 1041 (9th Cir. 2020) (quoting *United States v. Bailey*, 696 F.3d 794, 803 (9th Cir. 2012)). Here, it is more probable than not that a limiting instruction would not have materially affected the jury verdict because of the highly persuasive evidence against Jolly. The evidence at trial included, among other things, additional, uncontested calls from September 10 and September 14 (during which Jolly said that a police officer "[j]ust stumbled across me with a billion dollars' worth of drugs in my backpack") and Jolly's fingerprint

---

[2] The dissent points out that the Government represented in opening argument that "[t]here are multiple calls in which defendant admits . . . that he had drugs to sell on July 2nd, 2020." Dissent at 6. That representation was inaccurate to the extent it suggested that Jolly had expressly referred to a specific date during the calls. Any challenge to his conviction based on prosecutorial misconduct in mischaracterizing the evidence by making that statement, however, was "not raised clearly and distinctly in the opening brief" so has been forfeited on appeal. *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009).

found on cutting agent in the backpack—as well as the September 23 and 26 calls themselves for their valid, non-propensity purposes.

2. To the extent that the district court erred by admitting the September 13 call, any error would have been harmless so as to not warrant reversal. The meaning of the September 13 phone call is ambiguous. Although Jolly seemed to express during the call that he was upset about being arrested, the call does not admit Jolly's guilt, nor does it indicate Jolly's criminal propensity because the jury would have understood the redacted September 13 call to refer only to the arrest on July 2, 2020. Given the September 13 call's ambiguity, it is more likely than not that the admission of that call did not affect the jury's verdict.

3. Jolly argues that the admission of Officer Alvarez's, Officer Lusk's, and Agent Slovek's hearsay testimony concerning Wade Batchelor violated Jolly's Confrontation Clause rights. But those Confrontation Clause violations do not warrant reversal because they are harmless beyond a reasonable doubt.[3] Alvarez's testimony, which indicated that Jolly had thrown his backpack over to Batchelor in the parking lot, was harmless because, if believed, it actually supported the

---

[3] Although it undisputed that Jolly's Confrontation Clause rights were violated, the parties dispute whether Jolly waived his Confrontation Clause rights; whether, if not waived, each of Jolly's Confrontation Clause challenges should be reviewed for plain error or de novo; and whether the Confrontation Clause violations were harmless. We need not decide the first two issues because we hold that, even if Jolly's Confrontation Clause challenges were not waived and are reviewed de novo, any error was harmless beyond a reasonable doubt.

defense's theory that Batchelor somehow gained access to and planted drugs in Jolly's backpack. Relatedly, Slovek's and Lusk's testimony on redirect was also harmless because Batchelor's credibility had been thoroughly impeached by other testimony. Considered in light of all the other evidence in the record, the admission of any hearsay testimony about Batchelor's statements to Lusk and Slovek was harmless beyond a reasonable doubt.[4]

4. The cumulative effect of any potential errors here would not warrant reversal. The Government's calling Jolly a drug dealer once during closing argument would have had little prejudicial effect, even if it were misconduct. The September 13 call is so ambiguous that its possible prejudicial effect would have been far from clear, even if admitting the call were error. The September 23 and 26 calls could still have been considered as direct evidence, even if there had been a limiting instruction. Alvarez's hearsay testimony has no prejudicial effect because, if believed, it bolstered the defense theory. And Slovek's and Lusk's hearsay testimony had little prejudicial effect, if any, because Batchelor's credibility had already been thoroughly impeached by other testimony. Considered in light of all the other evidence in the record, even assuming those were all errors,

---

[4] Because we hold that the admission of Alvarez's, Lusk's, and Slovek's testimony was harmless beyond a reasonable doubt, it follows that any violation of Rule 403 as to Alvarez's, Lusk's, and Slovek's hearsay testimony was also harmless under the standard for nonconstitutional evidentiary challenges. *See Holmes*, 129 F.4th at 651.

their combined effect would not have been "so prejudicial as to require reversal."

*Necoechea*, 986 F.2d at 1282.

**AFFIRMED.**

*United States v. Jolly*, 22-50220

BRESS, Circuit Judge, dissenting:

Michael Jolly's first trial for possessing drugs with intent to distribute ended in a mistrial after jurors could not reach agreement. The government re-tried Jolly, but this time it introduced incriminating phone calls that Jolly made from jail. The district court admitted these calls without a Federal Rule of Evidence 404(b) limiting instruction. The government then repeatedly invoked the calls before the jury. The calls were key: the jury in Jolly's second trial found him guilty. In my view, the admission of the calls without clarifying instructions was manifest and prejudicial error. I would vacate Jolly's conviction.

Jolly was charged with possession with intent to distribute based only on his possession of drugs on July 2, 2020. Jolly was subsequently arrested twice more for drug offenses that summer, on August 9 and August 28, but the district court excluded this uncharged conduct under Rule 404(b). In September 2020, Jolly made several phone calls from jail in which he expressed surprise that he would be charged federally, although at the time Jolly did not know which arrest or arrests would serve as the basis for the federal charges. Statements from two calls, which took place on September 23 and September 26, 2020, are highly relevant here.

September 23, 2020:

> Jolly: Yeah, you know what I mean? I mean, dude, um like I don't know why they [federal prosecutors] would want me,

period.  Like, I mean dude, it's like.  *Like, I sell drugs to five people.*  You know what I'm saying?  You know what I mean?  I don't, I don't, I don't, I don't, I don't get it.  You know what I mean?  But whatever, you know what I mean?  You just have to roll with the punches.

September 26, 2020:

Jolly: I'm not a bad guy.  You know what I mean?  I'm not a bad guy, bro.  Like, I don't do people dirty out there or nothing like that.  You know what I mean?  [Unintelligible.]

Speaker: I give them what they pay for.

Jolly: Huh?

Speaker: I give them what they paid for.  I don't sell them short stacks.

Jolly:  Yeah, yeah, well yeah, you know what I mean?  Like all, honestly bro, all bullshit [unintelligible].  *I sell drugs to six people, bro, that's it!*  My close [unintelligible].  That's it, bro.  I'll admit to that.  I'll admit to that all fucking day.  You, you got me fuck, I'm red handed, dude.  You know what I mean?

Jolly objected to these calls as improper propensity evidence under Rule 404(b), but the district court declined to give a limiting instruction.

The district court concluded that the key statements in these calls did not implicate Rule 404(b) because they were not evidence "of any other crime, wrong, or act."  Instead, the district court reasoned that these calls "refer to the July 2, 2020 arrest," because Jolly referenced federal prosecutors pursuing him, and "[t]he only case the federal government has prosecuted against Defendant relates to the July 2, 2020 arrest," so the calls were direct evidence that Jolly sold drugs on July 2, 2020.

2

This reasoning is mistaken because at the time of the September jail calls, Jolly did not know which of his summertime arrests would be the basis for federal charges. In a footnote, the majority tellingly distances itself from the district court's erroneous reasoning.

Instead, the majority offers a new rationale. Citing Federal Rule of Evidence 401, the general test for relevant evidence, the majority concludes that Jolly's statements in the September 23 and 26 calls "are directly relevant to whether he possessed with intent to distribute on July 2, 2020, because they evince that Jolly had an ongoing drug business during a time period that included July 2, 2020, making it more probable 'than it would be without the evidence' that Jolly possessed with intent to distribute on that date." (quoting Fed. R. Evid. 401).

The majority confuses concepts. Jolly's jailhouse statements may well make it more probable that Jolly possessed drugs on July 2, 2020. But any evidence of Jolly's other drug dealing would have that effect, based on the supposition that one who deals drugs is more likely to have done so on a particular occasion. Yet Rule 404(b) steps in to prevent jurors from drawing that very type of inference. *See United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1264 (9th Cir. 2024) (explaining that Rule 404(b) guards against jurors drawing the forbidden inference "that the defendant is more likely guilty of the charged crime because of his past behavior (i.e., 'the propensity inference')"). The possible relevance of Jolly's statements

3

under Rule 401 does not prove they fall outside Rule 404(b).

Relevant or not, Jolly's statements clearly count as evidence of "any other crime, wrong, or act" beyond the "particular occasion" for which Jolly was charged. Fed. R. Evid. 404(b). Rule 404(b) is implicated when "a jury would likely infer from the statement[s]" that Jolly committed other crimes or wrongs beyond the charged conduct. *United States v. Parks*, 285 F.3d 1133, 1141 (9th Cir. 2002). That is certainly the case here.

Even assuming Jolly's September 23 and 26 calls encompassed his conduct on July 2, 2020—although he never specifically referenced his actions on that day— the statements most naturally refer to a continued pattern of wrongful drug-related conduct. Jolly speaks in the present tense ("I sell drugs to five people," and "I sell drugs to six people"), connoting a continuous course of conduct. He speaks about a different type of act, "selling" drugs, than the act with which he was charged, possession of drugs. And in context, we know Jolly was referring to more conduct than just July 2, because the calls took place after he had been arrested three times. It is likely, based on Jolly's use of the present tense and his references to selling drugs, that the jury would infer that the phone calls referred to acts on dates other than just July 2. Indeed, even the majority decision says that the calls "evince that Jolly had an ongoing drug business during [that] time period," a description that on its face includes other acts. At minimum, the district court clearly erred in not giving

4

a Rule 404(b) limiting instruction. And the government has never suggested a non-propensity purpose for the calls, thereby waiving any argument that they were otherwise admissible under Rule 404(b).

The main case the majority cites, *United States v. Moorehead*, 57 F.3d 875 (9th Cir. 1995), is inapposite. In *Moorehead*, the defendant was charged with being a felon in possession of a firearm, and the court ruled that testimony from the defendant's roommates that he had possessed the same firearm on multiple prior occasions was not other acts evidence, but rather direct evidence of the charged offense. *Id.* at 878. *Moorehead* would be analogous if the testimony in question there concerned the defendant's possession of other guns or his general habit of possessing guns, rather than his earlier possession of the same firearm that he was charged with illegally possessing. The majority accurately describes *Moorehead* as a case that treats as direct evidence "evidence of ongoing criminal conduct *identical to* the conduct being charged." (Emphasis added). That description does not apply to Jolly's September 23 and 26 statements.

Nor can the government show that the September 23 and 26 calls were harmless. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005). Instead, the calls were maximally prejudicial given the way in which the government used them at trial. The government not only repeatedly invoked the calls, it used them to drive a propensity inference. *See United States v. Charley*, 1

5

F.4th 637, 651 (9th Cir. 2021) ("Even where evidence of other acts is admissible, it is impermissible for the Government to argue that such evidence reflects the defendant's character."). For example, the government in its opening statement told jurors that "[t]here are multiple calls in which the defendant admits he's a drug dealer," and that "[t]his is a case about a drug dealer who was caught in the act and has admitted to his crimes," plural. Although the majority notes that a prosecutor's reference to a defendant being a drug dealer may not always be improper, here the government characterized Jolly through its reliance on a broader range of uncharged conduct from the two calls. As the district court cautioned the government at trial, "referring to him as a drug dealer I think connotes that there is a repeated pattern of this."

And beyond the propensity inferences, the government also miscast the September 23 and 26 calls as referring to the July 2, 2020 arrest. The government represented at the beginning of its opening statement, for example, that "[t]here are multiple calls in which defendant admits he's a drug dealer and that he had drugs to sell on July 2nd, 2020." The latter portion of that statement is inaccurate, which merely underscores the fact that the government's use of the calls was improper.[1]

---

[1] The majority's assertion that Jolly has forfeited this argument is incorrect. Jolly clearly argues that the government's use of the calls in its opening statement was improper. In his opening brief, he specifically quotes this portion of the opening statement and argues that by using the words "and"—"There are multiple calls in

The same is true of the government's repeated statements that Jolly had "admitted to his crimes," unless, of course, "crimes" refers to a series of other uncharged acts, which underscores the need for a Rule 404(b) limiting instruction.

The majority's amended disposition now asserts that even if the district court erred in not giving a Rule 404(b) instruction, the government has shown that any error is harmless "because of the highly persuasive evidence against Jolly." But the first jury trial that considered the charges resulted in a mistrial. And the additional evidence the majority points to does not allow the government to meet its burden of showing that "it is more probable than not that the error did not materially affect the verdict." *Gonzalez-Flores*, 418 F.3d at 1099 (quotations omitted); *see also Charley*, 1 F.4th at 651 (explaining that "we must start with a presumption of prejudice as to the effects of 'other acts' evidence") (quotations omitted).

The September 10, 2020 call concerned Jolly asking for cigarettes and proves little. The "billion dollars" comment in the September 14, 2020 call involved Jolly laughing while sarcastically criticizing a newspaper article about his arrest that he regarded as inaccurate. Jolly's fingerprint on a scoop with a cutting agent, found inside his backpack, is also not conclusive evidence of guilt. Jolly's fingerprints were not found elsewhere in the bag, the drugs did not contain the cutting agent, and

which defendant admits he's a drug dealer *and* that he had drugs to sell on July 2nd, 2020"—the government was asking the jury to infer guilt because Jolly was a drug dealer.

the fingerprint was consistent with Jolly's theory that the drugs themselves were not his. The additional evidence the majority cites is not so strong as to overcome the error in not giving a Rule 404(b) instruction for the critical September 23 and 26 calls, which the government heavily emphasized in its presentation to the jury.

Jolly's defense at trial was that the drugs found in a backpack on July 2 were not his. The first jury that heard the government's evidence could not reach agreement. The September 23 and 26 jailhouse calls at the second trial were the difference-maker. Because these calls contained evidence about Jolly's other misconduct that exceeded the conduct for which he was charged, and because no Rule 404(b) limiting instruction was provided, Jolly's conviction should be vacated.