**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tomas CHAVEZ–MIRANDA,**
**Defendant–Appellant.**

**No. 01–50615.**

United States Court of Appeals,
Ninth Circuit.

Submitted * Aug. 5, 2002.

Filed Sept. 30, 2002.

---

1. I also agree that a motion to reopen was not required in this case.

* This panel unanimously found this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Michael Ian Garey, Santa Ana, CA, for the defendant-appellant.

John S. Gordon, U.S. Attorney; John C. Hueston, Assistant U.S. Attorney; John D. Early, Assistant U.S. Attorney, Santa Ana, CA, for the plaintiff-appellee.

Before: T.G. NELSON, PAEZ and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge.

We must determine if the trial court correctly denied defendant-appellant Tomas Chavez–Miranda's motion to suppress evidence obtained from a search of his apartment during a narcotics investigation. The district court took evidence at a two-day suppression hearing and held that (1) there was probable cause in support of the search warrant; (2) a *Franks* hearing[1] was not warranted; and (3) forcible entry after 20 to 30 seconds did not violate 18 U.S.C. § 3109 (the "Knock and Announce Rule"). Chavez–Miranda conditionally pled guilty to conspiracy to possess with intent to distribute and to distribution of heroin under 21 U.S.C. §§ 841, 846, so he could appeal the denial of his motion to suppress. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I

We examine the sufficiency of the evidence to establish probable cause for a search warrant issued for Chavez–Miranda's apartment after an extensive narcotics trafficking investigation. On February 29, 2000, agents of the Drug Enforcement Administration ("DEA") established surveillance at the Santa Ana, California, home of co-defendant Jose Magana (the "Camille Residence"),[2] where a confidential source (the "informant") purchased one ounce of heroin from Magana. On March 9th, the informant arranged a second controlled buy. When Magana arrived at the Camille Residence at 5:22 p.m. he was accompanied by Chavez–Miranda, who left shortly thereafter. The informant arrived at the Camille Residence at 6:00 p.m. and purchased five ounces of heroin from Magana.

On March 20th, the informant conducted two additional controlled buys from Magana. The buys, each for five ounces of heroin, were arranged spontaneously in an effort to identify Magana's supplier. At 4:30 p.m., the informant contacted Magana to set up the first buy. Magana left the Camille Residence shortly thereafter. Magana contacted the informant at 6:15 p.m. and stated that he now had the heroin. The DEA spotted Chavez–Miranda's car at the Camille Residence at the same time. The informant entered the Camille Residence and was introduced to Chavez–Miranda, who left shortly thereafter. The informant then purchased five ounces of heroin from Magana and set up the second buy of the day for later in the evening.

1. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

2. Co-defendant Magana is not a party to this appeal; however, his home on Camille Street was used for the heroin sales.

Magana said he had to contact his "friend" to get the heroin.

The DEA followed Chavez–Miranda as he drove from the Camille Residence to his apartment (the "MacArthur Apartment"). Chavez–Miranda arrived at 7:00 p.m. and used an electronic access device to enter the parking lot of the gated community. Agents determined that the electric utility service for the MacArthur Apartment was subscribed under the name Miranda. At 7:15 p.m., the DEA observed Chavez–Miranda leave the MacArthur Apartment and return to the Camille Residence. At 7:28 p.m., Chavez–Miranda stopped outside the Camille Residence. An unidentified person briefly leaned into Chavez–Miranda's car, then Chavez–Miranda drove away. Magana called the informant approximately two minutes later and stated that the heroin had arrived. Chavez–Miranda engaged in counter-surveillance techniques as he drove from the Camille Residence back to the MacArthur Apartment—driving erratically, varying his speed, and frequently looking in his mirrors. Meanwhile, the informant completed the fourth and final controlled heroin purchase from Magana.

On March 25th, the informant arranged to purchase 100 ounces of heroin from Magana. On the 27th, Magana told the informant that he had 100 ounces ready for sale at the Camille Residence. On the 29th, DEA Special Agent John Difelice III, the lead case agent investigating Magana and Chavez–Miranda, submitted a 16–page sworn affidavit in support of an application for search and arrest warrants, which described the events related above. A magistrate judge issued search warrants the same day for both the Camille Residence and the MacArthur Apartment and arrest warrants for Magana and Chavez–Miranda.

On March 30, 2000, at about 4:43 p.m., officers executed the first search warrant at the Camille Residence, where they found approximately 2.9 kilograms of heroin and a loaded pistol. Magana was taken into custody at the Camille Residence, waived his constitutional rights, and informed the arresting officers that Chavez–Miranda was his supplier. Magana told the arresting officers that he would not contact Chavez–Miranda, however, because he feared that Chavez–Miranda would harm Magana's family if he did so.

At approximately 6:15 p.m. that same day, officers preparing to serve the second search warrant observed Chavez–Miranda and a woman with a child enter the MacArthur Apartment. Santa Ana police and DEA agents waited about 45 minutes, then executed the search warrant. Santa Ana Police Investigator Ruben Ibarra, who led the entry team, had been to the apartment complex in the past. The entry team knew that the small two-bedroom apartment occupied less than 800 square feet. Ibarra knocked on the door and said, first in English then in Spanish, "Santa Ana Police, we have a search warrant, open the door." Chavez–Miranda later testified that he heard knocking and understood the word "police." The district court found that the entry team waited 20 to 30 seconds without receiving any response before forcing the door open with a battering ram.

## II

■ On appeal of the denial of a motion to suppress evidence, we review conclusions of law de novo and factual findings for clear error. *United States v. Hammett*, 236 F.3d 1054, 1057 (9th Cir.2001).

### A

■ We must first determine whether the search warrant for the MacArthur

Apartment was supported by probable cause, and whether the connection between the criminal acts and Chavez–Miranda justified searching that locale. We review questions of probable cause de novo, but with "due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). We need only find that the issuing magistrate had a substantial basis for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In making this determination, a magistrate judge must assess the totality of the circumstances and make a "practical, common-sense decision." *Id.* at 238, 103 S.Ct. 2317. Under the totality of the circumstances test, otherwise innocent behavior may be indicative of criminality when viewed in context. *See United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991). Additionally, issuing judges may rely on the training and experience of affiant police officers. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir.1995).

The supporting affidavit listed a significant amount of evidence and easily established probable cause for the issuance of a search warrant for the MacArthur Apartment occupied by Chavez–Miranda. First, the affidavit clearly set forth the existence of criminal activity. Authorities recorded and monitored four controlled heroin buys conducted by a government informant. The affidavit of Agent Difelice described three incidents where Chavez–Miranda appeared with co-defendant Magana in connection with the controlled buys. Twice Magana told the informant that he now had the heroin within minutes of Chavez–Miranda's arrival. Additionally, Chavez–Miranda employed counter-surveillance driving techniques, which we have recognized as being "indicative of narcotics distribution." *Ocampo*, 937 F.2d at 490.

Second, the affidavit also established sufficient reason to search the MacArthur Apartment because a reasonable inference from the affidavit's facts suggested that incriminating evidence or contraband related to the crimes under investigation would likely be located there. When a magistrate judge issues a search warrant for a residence, he must find a "reasonable nexus" between the contraband sought and the residence. *United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir.1989). In making this determination, a magistrate judge need only find that it would be reasonable to seek the evidence there. *United States v. Terry*, 911 F.2d 272, 275 (9th Cir.1990). Moreover, we have recognized that in narcotics cases "evidence is likely to be found where the dealers live." *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986).

The evidence from Agent Difelice's supporting affidavit demonstrated that reasonable nexus. From the investigation, Chavez–Miranda was reasonably suspected of supplying the heroin, and it made sense to look for drugs at his apartment. The fact that Chavez–Miranda used a remote control device to open the security gate, that he parked his car in the building's gated parking lot, and that the electric utility was subscribed under the name "Miranda," tended to show that Chavez–Miranda resided in the MacArthur Apartment.

Furthermore, Chavez–Miranda traveled to and from the MacArthur Apartment at times and in a manner that appeared consistent with heroin being stored there before it was delivered to drug dealer Magana for sale to DEA operatives. Chavez–Miranda was observed driving from the Camille Residence to the MacArthur Apartment after the third controlled buy, but he stayed only briefly.

Chavez–Miranda then drove back to the Camille Residence, where someone was seen to lean into his car. Moments later, Magana called the informant and stated that he now had the heroin. Chavez–Miranda then drove back to the MacArthur Apartment using counter-surveillance techniques. Thus, the evidence created a substantial nexus between the narcotics trafficking and the storing of heroin at the MacArthur Apartment sufficient for the magistrate judge to authorize the search there.

B

▮ We next consider whether the district court should have conducted a *Franks* evidentiary hearing. We review the denial of a *Franks* hearing de novo, but review supporting factual determinations for clear error. *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000).

▮ Given the assumption of validity underlying a supporting affidavit, a party moving for a *Franks* hearing must submit "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Furthermore, the movant must show that any omitted information is material. *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir.1983). The movant bears the burden of proof and must make a substantial showing to support both elements. *See United States v. Garcia–Cruz*, 978 F.2d 537, 540 (9th Cir. 1992).

Chavez–Miranda contends that a *Franks* hearing was required because the affidavit displayed a pattern of deliberate omission. Specifically, he notes that when the informant was first introduced to Chavez–Miranda the two did not discuss drugs, and

that another vehicle was present in the vicinity of the sales on March 20th. Chavez–Miranda offers no evidence, however, to support the claim that the omissions were reckless or intentionally misleading. This bare assertion falls short of the preponderance of the evidence that *Franks* requires. *See, e.g., United States v. Dozier*, 844 F.2d 701, 705–06 (9th Cir.1988) (denying a *Franks* hearing when defendant failed to prove that omissions and false statements were intentional).

▮ The omitted facts were also immaterial to the question of probable cause. In determining materiality, "[t]he pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause." *Garcia–Cruz*, 978 F.2d at 541. The omission of the second vehicle is immaterial because the DEA observed the vehicle and determined that its occupants were not Magana's likely supplier. Furthermore, even if the affidavit had included the presence of the second car, the shadow of suspicion cast upon Chavez–Miranda would remain because Chavez–Miranda was also present at the Camille residence during the March 9 controlled buy. As the magistrate could have found probable cause even with mention of the second car in the affidavit, its omission from the affidavit was not material.

▮ Likewise, the fact that the informant and Chavez–Miranda did not discuss drugs when they were introduced is immaterial because the affidavit did not suggest that drugs were discussed. The inclusion of the omitted conversation topic would not diminish the importance of Chavez–Miranda's presence at the Camille Residence only minutes before the second controlled buy. Because Chavez–Miranda failed to offer proof that these omissions represented deliberate falsehood or a reckless disre-

gard for the truth, or that the omissions were material to a finding of probable cause, the district court properly denied the motion for a *Franks* hearing.[3]

## C

 Finally, we must determine if the officers complied with 18 U.S.C. § 3109 (the Knock and Announce Rule) when they forced entry after a 20 to 30 second wait. We review compliance with the Knock and Announce Rule de novo, but review the factual findings associated with the district court's ruling for clear error. *United States v. Granville*, 222 F.3d 1214, 1217 (9th Cir.2000).

 The Knock and Announce Rule allows an officer to "break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance...." 18 U.S.C. § 3109. Officers can infer constructive refusal to admit from silence, but only after a "significant amount of time." *Granville*, 222 F.3d at 1218 (internal quotation marks omitted). There is no established time that the police must wait; instead, the time lapse must be reasonable considering the particular circumstances of the situation. *See United States v. Banks*, 282 F.3d 699, 703–05 (9th Cir.2002); *McClure v. United States*, 332

F.2d 19, 22 (9th Cir.1964) (concluding that a 4 to 5 second wait was justified when police heard someone running away from door). When evaluating reasonableness, we consider such circumstances as (1) the size and layout of the residence; (2) the time of day; (3) the nature of the suspected offense; (4) the evidence demonstrating guilt; and (5) the officers' other observations that would support forced entry. *See Banks*, 282 F.3d at 704.

The district court rejected as not credible Chavez–Miranda's contention that the police forced entry after only six seconds and, instead, found as fact that the officers waited 20 to 30 seconds (including the time it took to complete the announcement) before breaking open the door. Applying the controlling cases at the time, the court then held that under these circumstances the police did not violate the Knock and Announce Rule.[4] While this case was on appeal, however, we issued our opinion in *Banks*, which held, under circumstances similar in many respects to the case at bar, that police officers violated the Knock and Announce Rule by waiting 15 to 20 seconds before forcing entry. *Id.* at 705.

In *Banks* the police executed a narcotics search warrant upon a small, two-bedroom apartment at two o'clock in the afternoon. *Id.* at 708 (Fisher, J. dissenting). The officers apparently did not know if the suspect was home, received no response to

---

3. Even if we were to hold the search warrant application invalid, Chavez–Miranda would have to prove that the good faith exception does not save the evidence seized under a facially valid search warrant. *See United States v. Leon*, 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (concluding that evidence from a search conducted in good faith that is based on a facially valid warrant should not be suppressed). The good faith exception will save a search based on a defective warrant unless no reasonable police officer could have believed there was probable cause to search the location identified in the search warrant. *See United States v. Tate*, 795

F.2d 1487, 1491 (9th Cir.1986). Because we hold that there was probable cause, we need not consider whether the officers' actions would have been otherwise reasonable if they had been executing an invalid warrant in good faith.

4. The district court cited, inter alia, *United States v. Allende*, 486 F.2d 1351, 1353 (9th Cir.1973) (holding that a 10 second wait was reasonable), and *United States v. Phelps*, 490 F.2d 644, 646 (9th Cir.1974) (holding that a 10 to 20 second wait was reasonable).

the knock and announcement, and heard no noise from inside the residence prior to forcing entry. *See id.* at 707. The suspect was the sole occupant of the apartment and was in the shower when the police executed the warrant. *See id.* at 705 (majority opinion). He apparently did not hear the knock and announcement, but emerged from the bathroom "naked, wet, and soapy" when the entry team broke through the door. *Id.* We ultimately found the 15 to 20 second wait unreasonable under the circumstances because (1) the officers heard no sound coming from the small apartment that would suggest a refusal of admittance, (2) there were no exigent circumstances, and (3) the officers "had no specific knowledge of any facts or reasonable expectations from which they could reasonably have believed that entry into Banks' residence would pose any risk greater than the ordinary danger of executing a search warrant on a private residence." *Id.* at 704–05.

■ We note that there are a number of similarities between *Banks* and this case. In both cases the apartments were small and the narcotics warrants were being executed at a time when one would reasonably expect the residents to be awake. In addition, in both cases the police did not hear any noise from inside the apartments suggesting that they had been heard but were being refused admittance, and no exigent circumstances were present.[5]

However, we find that this case differs from *Banks* in significant respects. In the present case, the police had specific knowledge of the layout of the apartment and its size, while it is unclear how much the police knew about the apartment layout in *Banks*. More importantly, here the police knew there were at least three people inside the house at the time the warrant was executed. This fact is particularly relevant since the warrant was executed at 7:00 p.m., a time when it was reasonable to assume that the occupants would be awake and available to respond.[6] By comparison, in *Banks* the police did not know if anyone was home. *See id.* at 707 (Fisher, J., dissenting) ("If there was a problem of procedural or constitutional dimension, it had to be that the officers did not knock twice or engage in some other effort to determine whether Banks was home and had heard the first knock.").

Here the searching officers had significant evidence of Chavez–Miranda's guilt, including Magana's confirmation that Chavez–Miranda was his supplier. The police had also just heard from Magana that he feared Chavez–Miranda might harm Magana's family, thereby indicating that the entry team was about to execute a warrant on someone who they were confident was a heroin dealer and might resort to violence. Finally, we note the police also waited longer before forcing entry in this case than in *Banks:* here the entry team waited 20 to 30 seconds; whereas the police waited 15 to 20 seconds in *Banks*.[7]

---

**5.** The existence of exigent circumstances would excuse compliance with the Knock and Announce Rule. *E.g., United States v. Reilly,* 224 F.3d 986, 991 (9th Cir.2000). We mention that exception here only to be consistent with *Banks*. As the police gave warning in this case, the issue is not one of the existence of exigent circumstances that would justify entry without notice, but whether the police officers reasonably inferred that they had been constructively refused entry under the

Knock and Announce Rule. The district court properly found that they did.

**6.** As such, even if one of the three individuals inside the apartment was in the bathroom or otherwise indisposed, one of the others should have been able to respond.

**7.** As it stands, *Banks* appears to be a departure from our prior decisions. As noted by the trial court, we have found a 10 to 20

The statute requires us to determine only if the police were reasonable in inferring constructive refusal to admit, not if they had, in fact, been constructively refused admittance. In the case before us, the officers were executing a narcotics warrant in the early evening at a small apartment with which they were familiar and knew to be occupied by at least three people. They had good reason to believe that heroin was being kept in the apartment and information that Chavez–Miranda posed the potential for violence. Officers knocked and announced their purpose, waiting 20 to 30 seconds without a response before forcing entry. Given these circumstances, the district court properly held that the police complied with the statutory Knock and Announce Rule and reasonably inferred that they had constructively been refused entry. The findings of fact to support this decision are not clearly erroneous. The resulting entry was lawful.

### III

We hold that the district court properly denied Chavez–Miranda's motion to suppress evidence. Given the totality of the circumstances, there was a substantial basis for finding probable cause to issue the search warrant and a reasonable nexus between the narcotics trafficking and the MacArthur Apartment that justified searching there. A *Franks* hearing was not required because Chavez–Miranda failed to meet his burden of proving reckless disregard by the affiant and the omissions in question were immaterial to a finding of probable cause. Finally, the officers executing the warrant abided by the statutory Knock and Announce Rule. The judgment of the district court is

**AFFIRMED.**

second wait to be reasonable in similar circumstances, albeit when the police heard sounds after the knock and announcement. *Allende,* 486 F.2d at 1353 (officers heard a scampering sound); *Phelps,* 490 F.2d at 646 (officers heard noises but no response). Several other circuits have upheld similar waits even without noise being heard. *See United States v. Jones,* 133 F.3d 358, 362 (5th Cir. 1998) (15 to 20 seconds reasonable and police may assume destruction of drug evidence); *United States v. Lucht,* 18 F.3d 541, 549 (8th Cir.1994) (20 second wait reasonable for narcotics search where the suspects were likely to be awake and the houses were small); *United States v. Knapp,* 1 F.3d 1026, 1030–31 (10th Cir.1993) (10 to 12 seconds reasonable where presence was only assumed and the suspect could not readily destroy the large quantity of marijuana); *United States v. Spriggs,* 996 F.2d 320, 322–23 (D.C.Cir.1993) (15 to 20 seconds reasonable and police need only knock and announce once); *United States v. Garcia,* 983 F.2d 1160, 1168 (1st Cir.1993) (10 seconds reasonable where suspects were "believed to possess cocaine, a substance that is easily and quickly hidden or destroyed").