**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　　　v.

ROBERT F. COMBS,
　　　　　　　　*Defendant-Appellant.*

No. 03-30456

D.C. No.
CR-02-00108-1-JKS

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, Chief Judge, Presiding

Submitted July 8, 2004*
Anchorage, Alaska

Filed January 11, 2005
Amended June 16, 2005

Before: Cynthia Holcomb Hall, Andrew J. Kleinfeld, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw

*This panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

**COUNSEL**

Lance C. Wells, Anchorage, Alaska, for the appellant.

Jo Ann Farrington, Assistant United States Attorney, Anchorage, Alaska, for the appellee.

**ORDER**

The opinion filed January 11, 2005 is amended as follows:

1) Page 406: Delete the sentence beginning, "Because there was no . . ." and replace with "Because there was no Fourth Amendment violation, we affirm Combs' conviction, but we issue a limited remand as to Combs' claim of Sixth Amendment sentencing error. *See United States v. Ameline*, No. 02-30326, slip op. at 6368-71 (9th Cir. June 1, 2005) (en banc)."

2) Delete the current Section III and add a new Section III as follows:

III.

Our original opinion did not address Combs' assertion of Sixth Amendment error. Because Combs did not challenge his

sentence on Sixth Amendment grounds in the district court, we grant a "limited remand" pursuant to *United States v. Ameline*, No. 02-30326, slip op. at 6368-71 (9th Cir. June 1, 2005) (en banc).

**AFFIRMED AND REMANDED.**

With these amendments, Combs' petition for rehearing is DENIED as moot.

---

## OPINION

WARDLAW, Circuit Judge:

Robert Combs appeals his conviction, following a bench trial, for maintaining a place for the manufacture of controlled substances, attempting to manufacture methamphetamine, being a felon in possession of a firearm, and criminal forfeiture. Combs asserts the district court erred in denying his motion to suppress evidence resulting from a search of his residence because the police did not physically knock on his door and therefore failed to adequately "knock and announce" before executing the search warrant. Whether the Fourth Amendment requires an actual "knock" on the door of a suspect's home before a search can be conducted is an issue of first impression in our circuit. We hold that under the totality of the circumstances presented in this case, the police acted reasonably in executing the warrant without first physically "knocking" on the front door of Combs's residence. Because there was no Fourth Amendment violation, we affirm Combs' conviction, but we issue a limited remand as to Combs' claim of Sixth Amendment sentencing error. *See United States v. Ameline*, No. 02-30326, slip op. at 6368-71 (9th Cir. June 1, 2005) (en banc).

I.

Background

After receiving an anonymous tip, Anchorage Police began investigating possible methamphetamine production and drug trafficking at the home of Robert Combs. A search warrant issued, based upon information obtained from the investigation, to search Combs's home at any time of the day or night for evidence of misconduct involving controlled substances.

On the morning of September 12, 2002, the search warrant was executed with the assistance of a Crisis Intervention Response Team ("CIRT"), a tactical police unit trained and equipped to handle high risk raids on suspected methamphetamine labs, which may involve exposure to various flammable, explosive, and toxic chemicals. The CIRT officers wore protective gear consisting of flash fire resistant Nomex balaclavas, gas masks, one-piece Nomex flight suits and Kevlar vests with police insignia.

Anchorage Police Lieutenant Steven Smith was in command. He had spent nearly seventeen years with the Anchorage Police Department, ten of which were with the CIRT. During those ten years, Lieutenant Smith participated in somewhere between thirty to forty warrant services. In addition to Lieutenant Smith, approximately ten to twelve CIRT officers were involved in the entry of Combs's house. Six officers were to make the actual entry at the door at the back of the house, while four to six additional officers were to provide cover.

When Lieutenant Smith arrived at the scene, he noticed smoke coming from the chimney and an acrid smell in the air. He also noticed what appeared to be an open flame at a window in the northeast corner of the house. Because the smoke and flame indicated that the occupants might be involved in the dangerous process of cooking methamphetamine, he

became concerned for the CIRT unit's safety. There were flood lights and two surveillance cameras attached to the house and the windows to the garage were papered over. The officers knew the house was occupied because a woman was seen entering the house just before the warrant was executed.

Service of the warrant commenced when Lieutenant Smith parked his marked police car, with the overhead lights flashing, in front of the house and began making announcements regarding the warrant service over the public address system in the front grill of the vehicle. Lieutenant Smith repeatedly publicly announced, for a period of thirty seconds to a minute, "Anchorage Police with a warrant for 1502 West 32nd Avenue."

Although Lieutenant Smith could not see the approach of the CIRT from the south of the building, he heard the entry team officers around the location announcing, "Anchorage Police with a warrant." Sergeant Soto, a member of the CIRT, was part of the group approaching the back door to make entry. Soto's role during the search was to be the "breacher." He carried a metal battering ram and halogen tools for this purpose. When the team members finished assembling at the door, they waited while Lieutenant Smith continued to announce the police presence with a search warrant. At some point, Soto's team leader told him to breach. Soto hit the door on the doorknob side with the battering ram four or five times without success. His team leader instructed him to hit the hinged side of the door. After two hits, the door broke open and the officers entered the house. Soto estimated that he spent a total of ten to twelve seconds pounding on the door with the battering ram.

The subsequent search of the house resulted in the seizure of, among other things, evidence of an active methamphetamine lab, firearms, and currency from drug trafficking. Officers also obtained a statement from Combs after he was placed under arrest and advised of his rights. Combs moved

for suppression of all of this evidence, arguing in part that the manner of execution of the search warrant was unreasonable because the police failed to properly "knock and announce" before breaching the door.[1]

## II.

## Discussion

**[1]** The common-law principle that law enforcement officers should "knock and announce" their presence and authority before entering a dwelling is part of the reasonableness inquiry under the United States Constitution's Fourth Amendment guarantee against unreasonable searches and seizures. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995).[2] However, "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. . . . [T]he common-law principle of announcement

---

[1]Combs mistakenly frames the issue as whether the state police complied with 18 U.S.C. § 3109 in the course of serving the search warrant on his house. However, 18 U.S.C. § 3109 governs the conduct of federal officers, not state officers such as those involved here. *United States v. Valenzuela*, 596 F.2d 824, 829-30 (9th Cir. 1979). Accordingly, Combs should have framed the issue as whether the state police acted reasonably under the Fourth Amendment. Nevertheless, because 18 U.S.C. § 3109 is the federal codification of the common-law knock and announce principle, it is relevant to our analysis.

[2]Two types of factual patterns emerge in knock and announce cases: cases where there is no knock or announcement prior to entry, a so called "no-knock" entry, *see, e.g., Wilson v. Arkansas*, 514 U.S. 927, 937 (1995) (police did not knock or announce prior to entering house), and cases where the court is analyzing the reasonableness of the announcement given by the police, *see, e.g., U.S. v. Banks*, 540 U.S. 31 (2003) (discussing whether the length of time after police announcement was sufficient and finding announcement to be reasonable). The Supreme Court has noted that the same criteria bear upon the reasonableness inquiry in both types of cases; therefore we apply the same analysis to both types of cases. *See id.* at 35.

was never stated as an inflexible rule requiring announcement under all circumstances." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995).[3] A physical knock is only one factor to be considered in the reasonableness inquiry and is not determinative. *See U.S. v. Chavez-Miranda*, 306 F.3d 973, 980 (9th Cir. 2002) (considering many factors in determining whether police entry was reasonable). Thus we must examine the totality of circumstances to determine whether a given search was reasonably executed.

## A.   The "Knock and Announce" Rule

That the government must announce its presence before entering a private home is a longstanding principle. In *Wilson*, the Supreme Court traced its origins to English common law. 514 U.S. at 931-33 (surveying cases applying the knock and announce rule from the 17th and 18th Centuries and citing Blackstone, Sir Matthew Hale, and William Hawkins). The Court noted that the "common-law knock and announce principle was woven quickly into the fabric of early American law." *Id.* at 933. It held that "the method of an officer's entry into a dwelling [is] among the factors to be considered in assessing the reasonableness of a search or seizure." *Id.* at 934. The *Wilson* Court left to the circuit courts the development of circumstances under which an entry is deemed reasonable under the Fourth Amendment. *Id.* at 936.

While the definition of "reasonableness" was left for another day, the *Wilson* opinion does provide guidance in determining what is reasonable. The Court set forth a non-exhaustive list of occasions when "the presumption in favor of announcement necessarily . . . give[s] way to contrary considerations." *Id.* at 935. It identified circumstances when the rule need not be strictly followed, such as when there is a

---

[3]We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's conclusions of law de novo and factual findings for clear error. *United States v. Hammett*, 236 F.3d 1054, 1057 (9th Cir. 2001).

threat of physical violence against law enforcement, when chasing a fleeing felon, or where evidence "would likely be destroyed if advance notice were given." *Id.* at 936. The Court was careful to note that the examples it gave were not a "comprehensive catalog of the relevant . . . factors," but rather illustrations of circumstances that may carry weight in a reasonableness determination. *Id.*

Since *Wilson*, the Court has reiterated that the knock and announce principle is a part of the reasonableness inquiry rather than a prerequisite for constitutional entry. *See U.S. v. Banks*, 540 U.S. 31, 35-36 (2003) (noting that the Court has "fleshed out" the notion of reasonable execution on a "case by case" basis "largely avoiding categories and protocols for searches"). Instead of setting bright-line, rigid rules, the Court has "treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case" because "it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones." *Id* at 36. *See also Richards v. Wisconsin*, 520 U.S. 385 (1997) (rejecting categorical exception to the knock and announce requirement for felony drug cases; favoring instead a case-by-case analysis).

## B.   The "Knock"

With this guidance from the Supreme Court, we cannot accept Combs's assertion that without a literal knock, the entry into his home was per se unreasonable under the Fourth Amendment. Nor can we accept the government's position that a knock is never necessary under the Fourth Amendment. Neither of these strict categorical approaches is consistent with the reasonableness inquiry laid out by the Supreme Court. *See Banks*, 540 U.S. at 41 (rejecting both the argument that damage to property should not be part of the reasonableness analysis and the argument that damage to property is a

heightened factor). Rather, "[t]he focus of the 'knock and announce' rule is properly not on what 'magic words' are spoken by the police, or whether the police rang the doorbell, but rather on how these words and other actions of the police will be perceived by the occupant." *U.S. v. Spikes*, 158 F.3d 913, 925 (6th Cir. 1998) (quotation omitted).

**[2]** The general practice of physically knocking on the door, announcing law enforcement's presence and purpose, and receiving an actual refusal or waiting a sufficient amount of time to infer refusal is the preferred method of entry. *See Banks,* 540 U.S. at 43. This method is preferable because it provides a clear rule that law enforcement can follow. It also promotes the goals of the knock and announce principle: protecting the sanctity of the home, preventing the unnecessary destruction of private property through forced entry, and avoiding violent confrontations that may occur if occupants of the home mistake law enforcement for intruders. *See Wilson*, 514 U.S. at 935-36; *Spikes*, 158 F.3d at 925.

**[3]** Although "knock and announce" is the preferred method of entry, given the totality of the circumstances in a particular case, it is not invariably required by the Fourth Amendment. In some circumstances, it may be necessary to dispense with the knock and announcement entirely. *See, e.g., U.S. v. Peterson*, 353 F.3d 1045, 1049 (9th Cir. 2003) (finding no-knock entry permissible because knock would have been futile, there was potential destruction of evidence, and danger to police officers). Other circumstances may warrant a knock and announcement, but only a relatively short delay before a forced entry. *See, e.g., Banks*, 540 U.S. at 39 (finding 15-20 second wait before entry reasonable given time of day and destructibility of the evidence). Under other circumstances, the police may not be justified in breaking down a door until they have waited a more extended period of time to infer a refusal of entry. *See, e.g., id.* at 41 (noting that "[p]olice seeking a stolen piano may be able to spend more time to make

sure they really need the battering ram" since that evidence is not easily destroyed).

**[4]** To determine whether an entry is reasonable, we must consider all the circumstances surrounding the entry, including, but not limited to, officer safety, *Wilson*, 514 U.S. at 936, time of day, *Banks*, 540 U.S. at 40, destructibility of evidence, *id.,* the size of the residence, the nature of the offense, and any other observations by law enforcement that would support a forced entry. *See Bynum*, 362 F.3d at 581; *Chavez-Miranda*, 306 F.3d at 980. We also must examine what, if any, notice the police gave before entry and the likelihood that the notice alerted those inside the home to the officer's presence and purpose. *See Spikes*, 158 F.3d at 927 (considering the police's bullhorn announcement an important factor in favor of reasonableness of entry). A physical knock, or any other one factor, is not dispositive.

In *U.S. v. Spikes,* the Sixth Circuit adopted this view in a case involving the "knock" component of knock and announce. In *Spikes*, the police announced their presence while running up the stairs to the front porch. *Spikes*, 158 F.3d at 919. Upon reaching the front door, they knocked on the door for about four seconds. *Id*. The defendant argued that in evaluating whether the police waited a reasonable amount of time before knocking down the door, the court should measure from the time of the knock, four seconds, and ignore the 15-30 seconds of announcement prior to the knock while the police ran up the stairs. *Id.* at 924. The *Spikes* court rejected this argument and instead analyzed the reasonableness of law enforcement's entry given the totality of the circumstances— taking into account the announcement prior to the knock, as well as the knock itself. *Id.* at 925.

**C.   Application of the Reasonableness Test**

**[5]** We conclude that the entry was reasonable in this case, even though a literal knock was not made. First, there was

reason for the officers to be concerned for their safety. The house was equipped with security cameras and flood lights. Windows were papered over, suggesting that the occupants of the home were concerned with protecting their illegal methamphetamine laboratory. *See U.S. v. Cline*, 349 F.3d 1276, 1289-90 (10th Cir. 2003) (finding the presence of surveillance cameras a factor in favor of the reasonableness of law enforcement's method of entry). In addition, after arriving at the scene, Lieutenant Smith noticed smoke coming from the chimney and what he thought to be an open flame at a window, indicating that the occupants may have been cooking methamphetamine—a dangerous process of mixing several highly explosive chemicals over an open flame.[4] Given these circumstances, it was reasonable for Lieutenant Smith to limit the amount of time his officers spent outside but within arm's reach of the house.[5]

**[6]** Second, the officers announced their presence to the extent possible given their legitimate safety concerns. They parked in front of the house in a marked police car with the overhead lights flashing. Lieutenant Smith repeatedly announced over a loudspeaker, "Anchorage Police with a warrant for 1502 West 32nd Avenue." Given the small size of the house, the time of day, the officer's knowledge that there was at least one occupant awake in the house, and that officers on the other side of the house heard the announcement, the district court's finding that "the residents of Combs' small home heard the police announce their presence and demand

---

[4]*See Methamphetamine Laboratory Identification and Hazards*, United States Department of Justice, National Drug Intelligence Center, *available at* http://www.usdoj.gov/ndic/pubs7/7341/#hazards (brochure describing hazards involved in producing methamphetamine).

[5]We take care to note that "[t]he officers' concerns were not based on generalizations or stereotypes of drug dealers or narcotics investigations, but rather on particularized, articulable, and reliable information." *U.S. v. Bynum*, 362 F.3d 574 (9th Cir. 2004). Thus, our analysis is in line with the Supreme Court's rejection of categorical exceptions for drug cases. *Richards v. Wisconsin*, 520 U.S. 385 (1997).

entry and disregarded that request" was not clearly erroneous. Moreover the occupants of the home could have had no doubt that the police had arrived to search *their* residence as the announcements repeatedly gave the street address of their home.

Given these circumstances, we find that law enforcement's actions were reasonable and the warrant's execution complied with the requirements of the Fourth Amendment. We do not suggest that the absence of any of these factors would compel a contrary conclusion. The factors we have listed are simply part of our "case by case" examination. Just as it is not permissible to "turn[ ] the notion of a reasonable time under all the circumstances into a set of sub-rules," likewise it is not appropriate to turn the knock and announce requirement "into a set of sub-rules." *Banks*, 540 U.S. at 41. "[A] categorical scheme on the general reasonableness analysis threatens to distort the 'totality of the circumstances' principle, by replacing a stress on revealing facts with resort to pigeon holes." *Id.* at 42.

### III.

Our original opinion did not address Combs' assertion of Sixth Amendment error. Because Combs did not challenge his sentence on Sixth Amendment grounds in the district court, we grant a "limited remand" pursuant to *United States v. Ameline*, No. 02-30326, slip op. at 6368-71 (9th Cir. June 1, 2005) (en banc).

**AFFIRMED AND REMANDED.**