# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

MIGUEL ANGEL VASQUEZ,
  *Defendant-Appellant.*

No. 10-50336

D.C. No.
2:08-cr-01359-
JHN-1

OPINION

Appeal from the United States District Court
for the Central District of California
Jacqueline H. Nguyen, District Judge, Presiding

Argued and Submitted
July 14, 2011—Pasadena, California

Filed August 15, 2011

Before: Pamela Ann Rymer, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Rymer

10835

## COUNSEL

Martha M. Hall, San Diego, California, for the defendant-appellant.

Asha M. Olivas, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## OPINION

RYMER, Circuit Judge:

Miguel Vasquez was found guilty after a bench trial of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). On appeal, he challenges his conviction and sentence. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

I

On October 17, 2008, the government sought and obtained a warrant to search the home of Miguel Vasquez and seize evidence of violations of the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962. The affidavit accompanying the search warrant was common to the search of 121 residences of members of the Mongols Motorcycle Club, a motorcycle gang engaged in racketeering activity, including murder, drug trafficking, robberies, hate crimes, and theft of motorcycles.

According to the affidavit, at the top of the Mongols organization was the "Mother Chapter," which directed the activities of the local chapters. Officers, specifically the president, vice-president, secretary/treasurer, and sergeant-at-arms, led the local chapters. The affiant noted that "the Mongols are different from many other criminal enterprises in that they keep extensive written documentation of their rules and activities." These documents, including minutes of meetings and financial records, often reflected criminal activity. Officers typically maintained these documents in a secure location such as their residences.

The affidavit names Vasquez in three places. Vasquez's residence is included in a table of the residences to be searched. The last column of the table, titled "Probable cause section discussed below" lists "records custodian" for Vasquez. The records custodian section states that "this affidavit is made in support of warrants to search for and seize the evidence of violations of [RICO]," and lists various qualifying predicate acts under RICO. It then lists the persons to be searched under this section, including Vasquez, and the items to be seized at their residences, including "[a]ll notes or minutes of meetings conducted by the Mongols."

Finally, Vasquez is named in a list of officers of Mongols chapters. Under the heading "*Hemet Chapter*" is the entry

"Miguel Vasquez — President." The affidavit also notes that the summary of the Mongols officers is based on information provided by undercover agents and confidential informants.

On October 21, agents executed the warrant. An agent searched the garage. He located sweat pants on the top shelf of a metal shelving unit situated on the west side of the garage. After retrieving the sweat pants, the agent took out socks from each of the pockets. An unloaded firearm (a Beretta) was inside one sock. The other sock contained two loaded magazines that fit the Baretta. The second shelf of the unit contained a stereo, a digital camera, and some photos. The photos were of Mongols and some included Vasquez. At the end of the shelving unit, the agent located a t-shirt, which was printed with the name "Miggy," a known alias of Vasquez.

The north wall of the garage contained another metal shelving unit. From the top shelf, the agent retrieved a black canvas bag. Inside the black bag was a Cobray Mac-11 firearm and several hundred rounds of ammunition. None of the ammunition fit the Mac-11. A black cooler airbrushed with Mongols insignias lay next to this shelving unit. It was unlocked and inside were Hemet Chapter bylaws, a member phone list, and photographs of prospective Mongols members.

Vasquez was indicted on one count of being a felon in possession of a firearm or ammunition. In the following months, the parties litigated a motion to suppress. Vasquez argued there was insufficient probable cause in the search warrant particularized to him and also sought a Franks[1] hearing because, as he alleged, the affidavit falsely stated that he was president of the Hemet Chapter. The district court held any falsity was immaterial because if Vasquez was the treasurer, instead of the president, there was still probable cause to search his home. The court also held that there was "probable

---

[1]*Franks v. Delaware*, 438 U.S. 154 (1978).

cause aplenty" in the search warrant and denied the motion to suppress. When the case was transferred to Judge Nguyen, Vasquez filed a motion to reconsider, which was denied. Judge Nguyen held that even deleting from the affidavit the statement that Vasquez was president, he was still an officer and probable cause remained.

At the bench trial, the agent who conducted the search, along with Vasquez's wife, sister, and boss, testified. He was found guilty. The Pre-Sentence Report (PSR) calculated a base offense level of 22 and a criminal history category of III for a Sentencing Guidelines range of 51-63 months. The PSR recommended a sentence of 36 months because his criminal history was overstated. His felony convictions were from 1992, when he was 18, and he had been an almost model citizen since then. At the sentencing hearing, the judge agreed with the PSR and reduced his criminal history category to II, which represented a Guidelines range of 46-57 months. She then imposed a sentence of 36 months. Vasquez now appeals.

## II

Vasquez challenges his conviction on two grounds: the adequacy of the search warrant and the sufficiency of the evidence. Neither challenge is persuasive.

## A

Vasquez argues that evidence of the guns and ammunition should have been suppressed because the warrant was invalid. We hold that based on the affidavit accompanying the warrant, the magistrate judge had a substantial basis for concluding there was a fair probability that evidence of a crime would be found in Vasquez's home. *See United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005); *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). The stated basis for the search was that Vasquez was the president of a Mongols chapter. The chapter presidents maintained organiza-

tional records in their homes, including minutes of meetings. Such records documented the illegal activities of the Mongols. The affidavit provided support for each of these assertions.

**[1]** There was probable cause to believe Vasquez was president of the Hemet Chapter. *Cf. United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). The affidavit notes that undercover agents and confidential informants collected phone lists and rosters. They also became officers and attended all-officer and all-member meetings. At these meetings, they were able to observe those who were officers. While there is nothing specific in the affidavit about how any of these informants learned that Vasquez was an officer, the magistrate judge could have reasonably inferred that the knowledge was obtained through attendance at meetings or the lists collected. *See Chavez-Miranda*, 306 F.3d at 978 (court must give "due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers" (internal quotation marks omitted)). Notably, Vasquez does not challenge the reliability or credibility of any informant or that their hearsay was insufficiently corroborated. *Cf. United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006).

**[2]** Next, the magistrate judge properly concluded that notes would be found in Vasquez's home. Vasquez is incorrect to insist that there be direct evidence that he was seen taking or possessing notes, because the magistrate judge may make reasonable inferences. *United States v. Dubrofsky*, 581 F.2d 208, 213 (9th Cir. 1978). The informants, who were members or leaders of various Mongols chapters, observed others maintaining notes of activities or themselves participated in keeping notes. The only inference necessary is that Vasquez was likely to maintain similar notes as part of his leadership of the Hemet Chapter. This inference is especially reasonable given the evidence that the Mongols leaders adhered to organizational rules that required presidents to maintain club documents, including minutes.

Lastly, the affidavit provides sufficient probable cause to believe the records would contain evidence of a crime. In *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983), *as amended*, this court reversed convictions of members of the Hells Angels Club because the warrants failed to support probable cause as to the nexus requirement. The search warrants sought indicia of membership at the houses of alleged members. These indicia of membership, though, contained no evidence of criminal activity, unless the entire enterprise was wholly illegitimate, which the Hells Angels Club was not. *Id*. at 793.

**[3]** The warrant here served a different purpose. It sought club documents not for their indication of membership in the Mongols but because these documents detailed illegal activity. The affidavit described how the Mongols organization conducted its affairs through prohibited racketeering activity, including engaging in transactions of narcotics and firearms. The Mongols kept notes and minutes of their meetings in which they discussed illegal activity. Thus, the magistrate judge had a substantial basis for concluding that the documentation, maintained at the residences of officers, would contain evidence of criminal activity.

**[4]** Vasquez also attacks the warrant as an unconstitutional general warrant. *See United States v. Bridges*, 344 F.3d 1010, 1015-16 (9th Cir. 2003). The prohibition of "general warrants" imposes a particularity limitation, requiring warrants to specify the items to be seized and the locations to be searched. *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). It prevents general, exploratory searches. *Id*.; *Chesher*, 678 F.2d at 1359-60 (noting that the "issue of probable cause must be distinguished from [ ] the issue of the warrant's possible unconstitutionality as a general warrant" but declining to reach the latter issue).

**[5]** In determining whether a description is sufficiently precise, we have focused on:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir. 1989) (internal quotation and alterations omitted). We have described the probable cause to seize Mongols documents, including the minutes of meetings. There is no indication that the government was able to describe these minutes in any more detail prior to the search. The government here did not seek to seize all documents or even all meeting notes but rather only Mongols documents, including notes of Mongols meetings. *Cf. VonderAhe v. Howland*, 508 F.2d 364, 370 (9th Cir. 1974) (unconstitutional for warrant to authorize "a massive re-examination of all records" where "government knew exactly what it needed and wanted"); *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 704-05 (9th Cir. 2009) (portion of search warrant authorizing the search for "Documents relating to non-privileged internal memoranda and E-mail" invalid when the government's interest limited to communications related to sleep studies).

**[6]** In *United States v. Apker*, 705 F.2d 293 (8th Cir. 1983), *modified on other grounds sub nom. United States v. Fitzgerald*, 724 F.2d 633 (8th Cir. 1983) (en banc), the Eighth Circuit struck down portions of a search warrant issued against Hells Angels Club members for failing to satisfy the particularity requirement. *See id.* at 299-303. The warrant sought "to obtain evidence of just one fact—membership in the Hells Angels." *Id.* at 302. Here, the warrant sought minutes of meetings not to show membership in the Mongols but because these documents contained evidence of criminal activity. *Apker*, then, is inapposite, and we conclude the warrant

described the documents to be seized with sufficient particularity.

Vasquez's last challenge to the warrant is that the district court erred in denying him a hearing to establish that the affidavit falsified material information. *See Franks v. Delaware*, 438 U.S. 154 (1978). The district court held that even if the affiant recklessly listed Vasquez as the president, it was immaterial because Vasquez's undisputed status as an officer provided sufficient probable cause to search his home. *See id.* at 171-72.

**[7]** Assuming the statement that Vasquez was president was false, we must purge it and determine whether what is left justifies issuance of the warrant. *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). We may not consider evidence outside the affidavit. *Baldwin v. Placer Cnty.*, 418 F.3d 966, 971 (9th Cir. 2005). Vasquez argues the entire statement "Miguel Vasquez — President" must be struck, resulting in no evidence to support the search of his home. We do not read the affidavit in such a technical manner. *See Illinois v. Gates*, 462 U.S. 213, 235-36 (1983).

**[8]** The statement summarizes the assertion that Vasquez was an officer of the Mongols, namely, the president. After striking out the fact that he was the president, we are left only with the fact that he was an officer. We must ask whether his status as an officer would have justified issuance of the warrant. It would. According to the affidavit, officers other than the president also maintained records, in their homes, that documented illegal activity. Regardless of Vasquez's title, his status as an officer allows the search of his home. Any falsity, then, about his status as the president was immaterial.

Because the warrant was valid, we need not consider whether the officers acted in good faith in relying on it. *See United States v. Leon*, 468 U.S. 897, 920 (1984).

B

**[9]** Vasquez next challenges his conviction for a lack of sufficient evidence. The government was required to show beyond a reasonable doubt that he constructively possessed the firearms. 18 U.S.C. § 922(g)(1); *United States v. Tucker*, 641 F.3d 1110, 1118-19 (9th Cir. 2011). "To prove constructive possession, the government must prove a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the firearms." *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001) (internal quotation marks omitted). "Dominion and control" means Vasquez had knowledge of the weapons and the power and intent to exercise control over them. *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990). The government may show such knowledge and intent through circumstantial evidence. *United States v. Thongsy*, 577 F.3d 1036, 1041 (9th Cir. 2009).

**[10]** The guns were found in Vasquez's garage. In close proximity, including on the same or nearby shelves, were located many items belonging to Vasquez. These included several photographs of Vasquez, and in some of them he was wearing Mongols paraphernalia. There were also other Mongols items on the shelves, which his sister admitted belonged to him. Finally, there were t-shirts in the area that belonged to him. One t-shirt was labeled "Miggy," which was his nickname. T-shirts found in his bedroom closet resembled the t-shirts in the garage. Overall, there was sufficient evidence for a trier of fact to conclude that Vasquez constructively possessed the firearms. *See Terry*, 911 F.2d at 278 (constructive possession where gun found in closet shared by defendant and wife surrounded by his clothes and men's boots); *Tucker*, 641 F.3d at 1119 (constructive possession of gun where defendant was sole occupant of bedroom and only user of its closet).

Vasquez's argument that there was no evidence he owned or had touched the firearms or that anyone had ever seen him

with the firearms is unavailing. The government did not need to show ownership or actual possession. Similarly, we are not required to believe his assertion that he was simply allowing someone else to store the weapons in his garage and did not intend to exercise control over them. *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (noting we must view the facts in a light most favorable to the prosecution).

## III

**[11]** Vasquez argues his sentence was substantively unreasonable. According to him, the district judge should have imposed a lower sentence because he has been a productive member of society, he had good motives in storing the weapons, and the higher sentence resulted in unwarranted disparities. We hold the judge did not abuse her discretion in imposing a sentence significantly below the Guidelines range. *Cf. United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010) (noting a sentence within the Guidelines range probably is reasonable).

As to his being a productive member of society, Vasquez seems to be rearguing his leniency plea. *See id.* (noting court unlikely to reverse a sentence when a defendant simply "reargues his leniency plea from district court"). The judge considered Vasquez's positive characteristics, reduced his criminal history category from III to II, and then sentenced him below the Guidelines range. She was not required to do more.

The judge concluded that even if she accepted Vasquez's version of the events evincing his good motives, the seriousness of his offense—storing two firearms and hundreds of rounds of ammunition after being convicted of two felonies—trumped it. The judge did not act unreasonably in emphasizing the seriousness of the offense. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) (noting we may

not reverse simply because we would have imposed a different sentence).

**[12]** Vasquez's final argument is that his sentence resulted in unwarranted disparities because several Mongols who were eventually prosecuted for RICO violations were given lower sentences. Specifically, according to him, thirty-three defendants received lower sentences and twenty-two higher. Seventeen defendants received probation, which is the sentence Vasquez sought. Even if these disparities are assumed to be unwarranted, this factor alone would not result in an unreasonable sentence. The need to avoid unwarranted sentences is only one factor the judge must consider. *United States v. Marcial-Santiago*, 447 F.3d 715, 719 (9th Cir. 2006). Here, the judge "exercised sound discretion" to ensure the punishment fit the crime by weighing the seriousness of the offense with all the mitigating factors and sentencing Vasquez to a significantly below-Guidelines term of imprisonment. *See id*. The sentence was reasonable.

**AFFIRMED.**